IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAUTILUS INSURANCE | : | CIVIL ACTION |
| COMPANY | : | |
| | : | |
| v. | : | |
| | : | |
| WESTFIELD INSURANCE | : | |
| COMPANY | : | NO. 16-4634 |

**MEMORANDUM**

**Padova, J.**                                                                                       September 27, 2017

Plaintiff Nautilus Insurance Company has brought this declaratory judgment action against Defendant Westfield Insurance Company, arising out of a dispute over which of the two parties is responsible for paying the Knerr Group, Inc.'s ("Knerr") defense costs in a separate personal injury suit against Knerr. Defendant has moved to dismiss the Complaint for Declaratory Judgment ("Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1), for lack of standing, and 12(b)(6), for failure to state a claim upon which relief can be granted. We held oral argument on the Motion on September 25, 2017. For the reasons that follow, we deny Defendant's Motion to Dismiss.

**I.      FACTUAL BACKGROUND**

The Complaint alleges the following facts. On August 26, 2009, Knerr leased the property located at 1000 E. Mermaid Lane, Glenside, PA 19038 (the "Premises") to Podcon, Inc. and Conpod, Inc. (collectively, "Podcon") pursuant to a written lease agreement (the "Lease").[1]

---

[1]The Complaint alleges that Knerr and Podcon entered into the Lease, without specifying their respective roles. However, the Lease, which is Exhibit A to Defendant's Motion to Dismiss, indicates that Knerr was the landlord and Podcon was the tenant. Because Plaintiff's claims rely on specific provisions of the Lease, we may rely on this document in deciding this Motion to Dismiss even though Plaintiff did not include it as an exhibit to the Complaint. See

(Compl. ¶¶ 6, 16; Lease (Def.'s Ex. A) at 1.) On December 23, 2011, a man named Anthony Postell suffered an injury in an accident that occurred at the Premises during the term of the Lease. (Compl. ¶ 6; Lease ¶ 2.) Postell filed a personal injury action against Knerr and Podcon, among others, in the Court of Common Pleas of Philadelphia County (the "Underlying Action"). (Compl. ¶ 7.) Plaintiff is providing Knerr's defense in that action, pursuant to an insurance policy it issued to Knerr. (Id. ¶¶ 8-9.) Podcon is the named insured of an insurance policy issued by Defendant (the "Westfield Policy"), which includes commercial general liability and umbrella liability coverage and was in effect on the date on which the accident occurred. (Id. ¶ 10; Westfield Policy (Def.'s Ex. B)[2] at IL 00 19 (04-88) at Pages 1 of 2, 2 of 2.)

Knerr requested that Defendant provide its defense in the Underlying Action, claiming that it was an insured under the Westfield Policy based on certain provisions in its Lease with Podcon. (Compl. ¶ 24.) Defendant denied Knerr's request. (Id. ¶¶ 13, 25.) Knerr, Defendant, and Plaintiff exchanged a series of letters between November, 2014 and August, 2015, regarding Knerr's status as an insured under the Westfield Policy and Defendant's duty to provide Knerr's defense in the Underlying Action. (Id. ¶¶ 24-34). The Complaint specifically alleges that Defendant conceded in a December 23, 2014 letter, that the Lease required Podcon to name Knerr as an additional insured on the Westfield Policy. (Id. ¶¶ 25, 29.)

The Lease required Podcon to take out liability insurance policies to cover the Premises. (Compl. ¶ 17; Lease ¶ 26.) The Liability Insurance provision of the Lease states as follows:

> All policies shall name Tenant as the insured. Tenant and Landlord, any mortgagee of the Premises, and other parties in interest as shall be designated by

---

Hughes v. United Parcel Serv., Inc., 639 F. App'x. 99, 103 (3d Cir. 2016) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

[2] We may consider the Westfield Policy in deciding this Motion to Dismiss because Plaintiff's claims also rely on this document. See Hughes, 639 F. App'x. at 103.

Landlord as additional insureds (the "Additional Insureds"). Tenant shall deliver to Landlord a certificate evidencing all of the required coverages and endorsements within thirty (30) days after request by Landlord. Each policy shall contain a provision that the insurance company shall give Landlord and any other Additional Insured thirty (30) days written notice in advance of any cancellation, lapse, reduction in amount of coverage or any other adverse change to the policy or insurer.[3]

(Compl. ¶ 18; Lease ¶ 26 at 14.)

The Westfield Policy consists of a "primary" general liability insurance policy and an umbrella liability policy. (Compl. ¶ 10.) The primary policy includes a duty to defend suits against the insured seeking damages for "bodily injury" or "property damage" that occurred during the policy period and was caused by an "occurrence" that took place on the Premises. (Westfield Policy at CG 00 01 12 07 at Page 1 of 16 §§ I.1.a; I.1.b.(1).) The primary policy includes a "General Liability Expanded Plus Coverage Endorsement" (the "Expanded Endorsement"), which identifies "Who is an Insured" and provides that "[a]ny person[] or organization[]" that Podcon "agreed in a written contract or agreement to name as an insured" is an additional insured under the policy. (Compl. ¶ 19 (quoting Westfield Policy at CG 70 93 08 05 at Page 3 of 5, 4 of 5).) However, such coverage extends only to "liability arising out of the ownership, maintenance or use of that part of the premises leased" to Podcon.[4] (Id.)

---

[3] In the Lease, Knerr is defined as "Landlord" and Podcon is defined as "Tenant." (Lease at 1.)

[4] The full text of the relevant portion of the Expanded Endorsement states as follows:
**SECTION II – WHO IS AN INSURED** is amended as follows:
\* \* \*
Item **6.** is added as follows:
**6. Managers or Lessors of Premises**
Any person(s) or organization(s) with whom you agree in a written contract or agreement to name as an insured but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and subject to the following additional exclusions:
This insurance does not apply to:

The primary policy also contains an endorsement entitled "Additional Insured – Owners, Lessees or Contractors – Automatic Status When Required in Construction Agreement With You" (the "Blanket Additional Insured Endorsement"). (Compl. ¶ 20; Westfield Policy at CG 20 33 07 04.) This provision "include[s] as an additional insured any person or organization for whom [Podcon was] performing operations," so long as Podcon had "agreed in writing in a contract or agreement that such person or organization be added as an additional insured on [Podcon's] policy." (Compl. ¶ 20; Westfield Policy at CG 20 33 07 04.) The additional insured coverage under this section applies only to "liability for 'bodily injury,' 'property damage' or 'personal and advertising injury' caused . . . by . . . [Podcon or] those acting on [its] behalf . . . in the performance of [Podcon's] ongoing operations for the additional insured."[5] (Compl. ¶ 20; Westfield Policy at CG 20 33 07 04.)

---

    **(1)** Any "occurrence" which takes place after you cease to be a tenant in that premises.
    **(2)** Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s).
(Westfield Policy at CG 70 93 08 05 at Pages 3 of 5, 4-5 of 5.)

[5]The full text of the relevant portion of the Blanket Additional Insured Endorsement states as follows:
    **Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by:
    **1.** Your acts or omissions; or
    **2.** The acts or omissions of those acting on your behalf;
    in the performance of your ongoing operations for the additional insured.
    A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.
(Westfield Policy at CG 20 33 07 04.)

The Complaint assterts four Causes of Action against Defendant. Plaintiff's First Cause of Action seeks a declaration that Knerr is an insured under the Westfield primary policy, and that Defendant is obligated to defend Knerr in the Underlying Action.[6] (Compl. ¶¶ 35-39.) The Second Cause of Action seeks a declaration that Knerr is an insured under the Westfield umbrella policy. (Id. ¶¶ 40-43.) The Third Cause of Action seeks a declaration that the Westfield primary policy provides primary insurance to Knerr and, therefore, Defendant has the primary duty to defend Knerr in the Underlying Action, and that the policy Plaintiff issued to Knerr is excess to the Westfield primary policy. (Id. ¶¶ 44-48.) The Fourth Cause of Action asserts an unjust enrichment claim against Defendant, seeking reimbursement from Defendant of all costs Plaintiff has incurred and will incur in providing Knerr's defense in the Underlying Action. (Id. ¶¶ 49-54.)

## II.  LEGAL STANDARD

Defendant has moved to dismiss all of Plaintiff's claims under Fed. R. Civ. P. 12(b)(1), arguing that Plaintiff lacks standing to bring these claims, and under Rule 12(b)(6), arguing that the Complaint fails to state a claim upon which relief can be granted. "'A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter.'" Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014) (alteration in original) (quoting Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007)). A motion to dismiss for lack of standing brought pursuant to Rule 12(b)(1) may challenge the court's jurisdiction on either "factual" or "facial" grounds. Id. at 357-58 (citing In re Schering

---

[6]Although Plaintiff does not specify under what law it seeks declarations in its First, Second, or Third Causes of Action, we assume that the declarations are sought under the Declaratory Judgment Act, which provides that, in a case for which subject matter jurisdiction otherwise exists, "any [District] court . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.

5

Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)). A facial attack is an argument that the complaint on its face is insufficient to trigger the court's subject matter jurisdiction. Id. at 358 (3d Cir. 2014). Where, as here, a defendant challenges the subject matter jurisdiction of the court before "fil[ing] any answer to the Complaint or otherwise present[ing] competing facts . . . [i]ts motion [is] . . . by definition, a facial attack." Id. (citation omitted). We review facial attacks using the same standard of review we use in considering a motion to dismiss brought pursuant to Rule 12(b)(6), and consider only "'the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'" Id. (quoting In re Schering Plough, 678 F.3d at 243).

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). Thus, we consider undisputedly authentic documents attached to the motion to dismiss when the documents are "*integral to or explicitly relied* upon in the complaint." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1440, 1426 (3d Cir. 1997)). We take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff." DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)). Legal conclusions, however, receive no deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "'a short and plain statement of the claim,'" which gives "'the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2); and Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,'" Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556), but it "requires showing 'more than a sheer possibility that a defendant has acted unlawfully.'" Burch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (quoting Iqbal, 556 U.S. at 678). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## III. DISCUSSION

### A. Rule 12(b)(1)

Defendant asks us to dismiss the Complaint in its entirety pursuant to Rule 12(b)(1) on the ground that Plaintiff lacks standing to assert its claims because it is seeking a declaration of Knerr's legal interests rather than its own. "Article III of the Constitution limits [the power of federal courts] to the adjudication of 'Cases' or 'Controversies.'" Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137 (3d Cir. 2009) (quoting U.S. Const. art. III, § 2). "[T]he case-or-controversy requirement" is enforced through "justiciability doctrines" that include "standing,

ripeness [and] mootness." Toll Bros., 555 F.3d at 137 (citing DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006)) (additional citation omitted). In order to demonstrate Article III standing, "a plaintiff must identify '(1) a cognizable injury that is (2) causally connected to the [defendant's] alleged conduct and is (3) capable of being redressed by a favorable judicial decision.'" Williams v. BASF Catalysts LLC, 765 F.3d 306, 327 (3d Cir. 2014) (quoting Pa. Family Institute, Inc. v. Black, 489 F.3d 156, 165 (3d Cir. 2007); and citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). In addition to these constitutional limitations, courts have articulated "prudential principles by which the judiciary seeks to . . . limit access to the federal courts to those litigants best suited to assert a particular claim." Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 99-100 (1979). Among other requirements, prudential standing mandates "that a litigant assert his or her own legal interests rather than those of a third party." Lewis v. Alexander, 685 F.3d 325, 340 (3d Cir. 2012) (citing Mariana v. Fisher, 338 F.3d 189, 205 (3d Cir. 2003)).

The Complaint alleges that the Lease between Knerr and Podcon required the latter to add Knerr as an insured under Podcon's liability insurance policies. (Compl. ¶¶ 36, 41.) It also alleges that, under the terms of the Westfield Policy, Knerr qualifies as an insured, and that Defendant is therefore obligated to provide Knerr with a defense in the Underlying Action. (Id. ¶¶ 11-12, 37-38, 42, 47, 51.) It further alleges that Defendant has denied Knerr's requests for a defense, and that Plaintiff has consequently incurred costs for Knerr's defense that it would not otherwise be obligated to pay. (Id. ¶¶ 9, 13-14, 24-25, 32, 34, 50-51.)

Defendant argues that Plaintiff lacks prudential standing because it is seeking to assert Knerr's right to a defense rather than any legal interest of its own. Defendant maintains that Plaintiff does not seek to enforce its own legal interests because it relies on documents, namely

the Westfield Policy and the Lease, to which Plaintiff is not a party and which are legally distinct from the insurance policy that Plaintiff issued to Knerr. Defendant further argues that Plaintiff's Fourth Cause of Action, which seeks reimbursement for the sums Plaintiff has paid for Knerr's defense in the Underlying Action under an unjust enrichment theory, does not create standing because this claim is entirely dependent upon Knerr's right to coverage under the Westfiled Policy.

Under Pennsylvania law, an insurance company has standing to bring an action to recover defense costs under an insurance policy issued to its insured by an another insurance company because "'there is no bar against an insurer obtaining a share of indemnification or defense costs from other insurers under 'other insurance' clauses or under the equitable doctrine of contribution.'" Transp. Ins. Co. v. Pa. Mfrs.' Ass'n Ins. Co., 641 F. Supp. 2d 406, 411 (E.D. Pa. 2008), rev'd on other grounds, 346 F. App'x 862 (3d Cir. 2009) (quoting J.H. France Refractories v. Allstate Ins. Co., 626 A.2d 502, 509 (Pa. 1993); and citing Koppers Co., Inc. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1454 (3d Cir. 1996)).[7] In the instant case, as detailed above, the Complaint alleges that Plaintiff has suffered a concrete monetary injury as a direct result of Defendant's allegedly wrongful denial of coverage to Knerr. (Compl. ¶¶ 50-52.) Specifically, the Complaint alleges that Plaintiff is paying for Knerr's defense costs in the Underlying Action, and that Defendant should pay these costs because Knerr is an insured under the Westfield primary policy and therefore entitled to the payment of its defense costs under that policy. (Id. ¶¶ 9, 11-14, 37-38, 42-43, 47-48, 50-52.) We conclude that these allegations are

---

[7]When we exercise our diversity jurisdiction over a declaratory judgment action, we apply state law to the underlying substantive issues. Todd v. Liberty Mut. Fire Ins. Co., Civ. A. No. 00-2533, 2001 WL 33771, at *2 (E.D. Pa. Jan. 12, 2001) (citing Britamco Underwriters, Inc. v. C.J.H., Inc., 845 F. Supp. 1090, 1093 (E.D. Pa. 1994), aff'd, 37 F.3d 1485 (3d Cir. 1994)). The determination of whether Plaintiff has asserted its own legal interests in this action is, therefore, made by reference to Pennsylvania law.

9

sufficient to establish that Plaintiff is asserting its "own legal interests rather than those of a third party." Lewis, 685 F.3d at 340. We further conclude, accordingly, that Plaintiff has prudential standing to bring the claims asserted in the Complaint. See Transp. Ins. Co., 641 F. Supp. 2d at 411.

In reaching this conclusion, we have carefully considered, but found unpersuasive, the trio of cases on which Defendant primarily relies to support its argument that Plaintiff lacks prudential standing: Lancer Insurance Co. v. Harleysville Mutual Insurance Co., 108 F. Supp. 3d 275 (E.D. Pa. 2015); Wausau Insurance Cos. v. Indemnity Insurance Co. of North America, Civ. A. No. 90-0722, 1990 WL 82085 (E.D. Pa. June 11, 1990); and American Home Assurance Co. v. Liberty Mutual Insurance Co., 475 F. Supp. 1169 (E.D. Pa. 1979)). The Lancer court held that a plaintiff insurance company "lack[ed] prudential standing" to seek declarations that two other insurance companies were required to defend and indemnify the plaintiff's insured in an underlying lawsuit "because it [sought] a declaration about third parties' legal interests rather than its own." Lancer Ins. Co., 108 F. Supp. 3d at 276, 278. However, the plaintiff in Lancer, unlike Plaintiff in the instant case, did not seek reimbursement or equitable contribution. Rather, it sought only "a declaration about what other insurers are required to do for their insureds, not about what they are required to do for [the plaintiff]." Id. In Wassau, the court considered whether a plaintiff insurance company had standing to seek a declaration that the defendant insurance company had wrongfully denied coverage to the defendant's insureds who had been involved in a car accident. Wassau Ins. Cos., 1990 WL 82085, at *1. The plaintiff alleged that the defendant's denial of coverage had caused the plaintiff's insured to seek coverage from the plaintiff under an uninsured motorist provision. Id. The Wassau court held that it was "obvious" that the plaintiff lacked standing to seek such a declaration, because the Wassau plaintiff, unlike

Plaintiff here, had not suffered any injury because it had "not paid any money on [its insured's] claim," and, therefore, was "not asserting its own rights, but [was] asserting those of [the defendant's insureds]." Id.

The American Home court considered whether plaintiff insurance companies had standing to bring a declaratory judgment action against a defendant insurance company based on a contractual indemnification agreement to which none of the insurance companies was a party. 475 F. Supp. at 1171. The indemnification agreement was between the plaintiffs' insured, a contractor, and the defendant's insured, a subcontractor; the plaintiffs sought a declaration that the defendant insurance company was obligated under the agreement to indemnify the plaintiffs for any liability or costs they incurred defending a wrongful death action against the contractor. Id. The court found that the indemnity agreement between the policyholders was "legally distinct from the insurance policies issued by the plaintiffs" and that the plaintiffs had no legal interests that were adverse to the subcontractor or the defendant insurance company; consequently, the plaintiffs lacked standing to seek a declaration against either the subcontractor "as the indemnitor, since they were not signatories to the indemnity agreement" or the defendant insurance company "because [the defendant's] policy with [the subcontractor was] . . . legally distinct from the indemnity agreement." Id. at 1172. Unlike the plaintiffs in American Home, Plaintiff in the instant case does not seek to enforce the Lease or the Westfield Policy against Defendant; rather, it seeks declarations of Knerr's status as an insured under the Westfield Policy as necessary components of its unjust enrichment claim. Although we must determine the meaning of the Lease and Knerr's rights under the Westfield Policy in order to decide Plaintiff's claim, that fact does not deprive Plaintiff of its standing to either assert its unjust enrichment claim or to seek the declarations necessary to its theory of recovery, because the Complaint in

11

this case alleges that Plaintiff has legal interests that are adverse to Defendant. Thus, American Home is inapplicable to the instant case.

Accordingly, we find that, contrary to Defendant's argument, Lancer, Wassau, and American Home do not support the dismissal of the Complaint for lack of prudential standing. As we discussed above, an insurance company has standing to bring a suit to recover defense costs from another insurance company that "insure[d] the same property, interest and risk." Transp. Ins. Co., 641 F. Supp. 2d at 412. Plaintiff in the instant case asserts essentially the same legal interest as the plaintiff in Transportation Insurance, that is, an interest in recovering defense costs that it alleges Defendant should have paid.[8] Consequently, we conclude that the Complaint alleges sufficient facts to establish Plaintiff's standing to bring this action in this Court. We therefore deny Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

B. Rule 12(b)(6)

Defendant argues that we should dismiss the First Cause of Action pursuant to Rule 12(b)(6) on the ground that the Complaint relies on the plain language of both the Lease and the Westfield Policy, which demonstrate as a matter of law that it is not obligated to cover Knerr as an additional insured. Under Pennsylvania law, the determination of whether an insurer is under a duty to defend an insured "is purely contractual, and an insurer has no duty to defend unless the obligation is expressed in the policy." Genaeya Corp. v. Harco Nat. Ins. Co., 991 A.2d 342, 347

---

[8] Defendant attempts to distinguish Transportation Insurance on the basis that it "involved two insurers that both insured the same third party" rather than the instant case where "two insurers [are] insuring two distinct third parties under separate policies." (Def.'s Reply at 5 n.3.) Defendant, however, misconstrues the Complaint. Viewing all factual allegations in the light most favorable to Plaintiff, the Complaint alleges that both Plaintiff and Defendant have in fact insured the same party, i.e. Knerr, because Knerr is allegedly an additional insured under the Westfield Policy. (Compl. ¶¶ 11, 18-19, 29, 36-37, 41-42.)

(Pa. Super. Ct. 2010) (citation omitted). Leases are also "controlled by principles of contract law," and must "be construed in accordance with the terms of the agreement as manifestly expressed." T.W. Phillips Gas & Oil Co. v. Jedlicka, 42 A.3d 261, 267 (Pa. 2012) (citing J.K. Willison v. Consol. Coal Co., 637 A.3d 979, 982 (Pa. 1994)). Moreover, "'[t]he accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the agreement.'" Id. (quoting J.K. Willison, 637 A.3d at 982) (alteration in original).

As we mentioned above, the First Cause of Action seeks a declaration that Knerr is an additional insured under the Westfield primary policy and that Defendant is obligated to defend Knerr in the Underlying Action. (Compl. ¶¶ 35-39.) In order to determine whether Knerr is an insured and whether Defendant has an obligation to provide a defense to Knerr, we must first interpret the terms of the Westfield Policy and the Lease. "[A]s a general matter, interpretation of a written agreement is a task to be performed by the court rather than a jury." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 587 (3d Cir. 2009) (citations omitted). However, this is only true "so long as the words of the contract are clear and unambiguous." Id. (citation omitted). "The paramount goal of contract interpretation is to determine the intent of the parties." Id. (quotation omitted). "When the words of a contract are clear and unambiguous, the intent of the parties must be ascertained from the language employed in the contract, which shall be given its commonly accepted and plain meaning." TruServ Corp. v. Morgan's Tool & Supply Co., 39 A.3d 253, 260 (Pa. 2012) (citing LJL Transp., Inc. v. Pilot Air Freight Corp., 962 A.2d 639, 647 (Pa. 2009)). Moreover, "[t]he whole instrument must be taken together in arriving at contractual intent." Murphy v. Duquesne Univ. of the Holy Ghost, 777 A.2d 418, 429 (Pa. 2001) (citation omitted). "The meaning of an unambiguous written instrument presents a question of

13

law for resolution by the court." Id. at 430 (citing Cmty. Coll. v. Cmty. Coll., Soc'y of the Faculty, 375 A.2d 1267, 1275 (Pa. 1977)). However, the resolution of the meaning of an ambiguous writing is reserved for the finder of fact. Kripp v. Kripp, 849 A.2d 1159, 1163 (Pa. 2004) (citing Cmty. Coll., 375 A.2d at 1275). "Contractual terms are ambiguous 'if they are subject to more than one reasonable interpretation when applied to a particular set of facts.'" Liberty Mut. Ins. Co. v. Sweeney, 689 F.3d 288, 293 (3d Cir. 2012) (quoting Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)).

Defendant contends that the First Cause of Action does not state a claim upon which relief can be granted because Knerr does not qualify as an insured under the plain language of the Westfield primary policy. The Complaint alleges that Knerr is an insured pursuant to two provisions of the Westfield Policy, namely the Expanded Endorsement and the Blanket Additional Insured Endorsement. (See Compl. ¶¶ 19, 20, 35-38.) Specifically, the Complaint alleges that Defendant is obligated to defend Knerr in the Underlying Action because Knerr is an additional insured under the Expanded Endorsement. (See id. ¶¶ 19, 35-38.) That provision defines as an insured anyone Podcon "'agreed in a written contract . . . to name as an insured . . . with respect to liability arising out of the ownership, maintenance or use'" of the Premises. (Id. ¶ 19 (quoting Westfield Policy at CG 70 93 08 05, Page 4 of 5).) The Complaint further alleges that the Lease between Podcon and Knerr "required Podcon . . . to add Knerr as an insured under [its] liability insurance policies." (Id. ¶ 36.) Defendant concedes that the Expanded Endorsement would require it to provide coverage to Knerr "if Podcon agreed in the Lease to name Knerr as an additional insured." (Def.'s Reply at 8.)

Plaintiff's assertion that Knerr is an insured under the Westfield primary policy rests in part on paragraph 26 of the Lease. That paragraph of the Lease states that the Tenant, i.e.,

14

Podcon, is required to maintain certain liability insurance. (Compl. ¶ 17; Lease at ¶ 26(a), (e).) It further states that all insurance policies shall name the Tenant as the insured. (Compl. ¶ 18; Lease ¶ 26 at 14.) The Lease further states that: "Tenant and Landlord, any mortgagee of the Premises, and other parties in interest as shall be designated by Landlord as additional insureds (the 'Additional Insureds')." (Compl. ¶ 18; Lease ¶ 26 at 14.) Paragraph 26 of the Lease also includes a requirement that "[e]ach policy shall contain a provision that the insurance company shall give Landlord and any other Additional Insured thirty (30) days written notice in advance of any cancellation." (Compl. ¶ 18; Lease ¶ 26 at 14.)

Defendant asserts that paragraph 26 of the Lease does not embody the necessary promise by Podcon to make Knerr an additional insured because it lacks language obligating Podcon to take any action.[9] Because the Lease does not clearly state that the Tenant is obligated to designate the Landlord as an additional insured, Defendant asks that we find that the plain language of the Lease unambiguously contradicts Plaintiff's allegation that Podcon was required to name Knerr as an insured.

Upon careful consideration of the language of paragraph 26 of the Lease, we conclude that it is ambiguous because the sentence requiring the designation of additional insureds is incomplete. The plain language of this sentence lists a series of entities, and names them as a defined term, but contains no predicate verb indicating what, if anything, is to be done to or by those entities. The sentence lists the following: 1) "Tenants and Landlord," 2) "any mortgagee,"

---

[9] Defendant disputes Plaintiff's allegation that it conceded, in its correspondence with Knerr and Plaintiff, that the Lease required Podcon to name Knerr as an additional insured. (Compl. ¶ 29; Def.'s Mem. at 15-17.) It has also submitted copies of the correspondence in support of this argument. (Def.'s Exs. C-H.) Because Plaintiff's claims do not rely on the content of these letters, these exhibits are outside of the scope of the materials we may consider in deciding a motion to dismiss and we have not considered them. See Mayer, 605 F.3d at 230. In any case, such a concession would not affect our analysis at this stage, which is concerned with the meaning of the plain language of the Lease.

and 3) "other parties in interest . . . designated by Landlord <u>as</u> additional insureds," but fails to state what those entities must do. (Compl. ¶ 18 (emphasis added) (citing Lease ¶ 26 at 14).) If the "as" immediately following "Landlord" were, instead, an "are," such that the sentence read: "Tenant and Landlord, any mortgagee . . ., and other parties in interest . . . [are] additional insureds," then the provision would be both a complete sentence, and unambiguously support Plaintiff's position. (<u>Id.</u> (alteration added).) However, as the sentence was written, it is ambiguous.

Plaintiff maintains that the use of the phrase "Additional Insureds" in this sentence demonstrates that the parties to the Lease intended to designate the listed entities, including the Landlord, as additional insureds under the insurance policies the Lease requires the Tenant to maintain.[10] While Defendant correctly notes that this provision lacks unambiguous language obligating Podcon to name Knerr as an additional insured, the plain language of this sentence also does not unambiguously contradict such an obligation.[11] In the face of ambiguous language

---

[10]Our conclusion that the relevant language of paragraph 26 of the Lease is ambiguous is made by reference to the plain language of the Lease only, and not any extrinsic evidence. Although Plaintiff submitted an affidavit in support of its argument as to the intent of the parties to the Lease as Exhibit B to its Brief in Opposition to the Motion to Dismiss, we have specifically declined to consider it as such testimonial evidence is beyond the scope of what we may consider in deciding a motion to dismiss. See <u>Mayer</u>, 605 F.3d at 230.

[11]In the event that the Lease is unclear, Defendant argues that it should be construed against Plaintiff based on Pennsylvania's rule of contract interpretation that ambiguous leases be construed "most strongly against the lessor and in favor of the lessee." <u>Pathmark Stores, Inc. v. Gator Monument Partners, LLP</u>, Civ. A. No. 08-3082, 2009 WL 5184483, at *7 (E.D. Pa. Dec. 21, 2009) (citation omitted). However, Defendant is not the lessee, and an interpretive rule that protects tenants is not necessarily applicable to a tenant's insurer. See <u>Asplundh Tree Expert Co. v. Pac. Emp'rs Ins. Co.</u>, Civ. A. No. 90-6976, 1992 WL 382373, at *12 (E.D. Pa. Dec. 9, 1992) (noting that the existence of a similar rule that favored policyholders over insurers in construing insurance policies "'because of their disparate bargaining power does not suggest [that Pennsylvania courts] would be other than neutral in a dispute among insurers themselves.'" (quoting <u>Keystone Shipping Co. v. Home Ins. Co.</u>, 840 F.2d 181, 185 (3d Cir. 1988)). Accordingly, we decline to apply such an interpretive rule here.

regarding the obligation to name additional insureds, we cannot say at this stage that the parties could not have reasonably intended the Lease provision to be an agreement to name Knerr as an additional insured. See Kripp, 849 A.2d 1163 ("[A]mbiguous writings are interpreted by the finder of fact.").

Accordingly, considering the allegations of the Complaint and the relevant exhibits in the light most favorable to the Plaintiff, we conclude that the Complaint plausibly alleges that the Lease amounted to an agreement that Podcon would add Knerr as an additional insured under the Westfield primary policy. We further conclude that the Complaint thus plausibly alleges that Knerr is an insured under the Expanded Endorsement to the Westfield primary policy, which states that anyone Podcon "agreed in a written contract . . . to name as an insured" is an insured. (Compl. ¶ 19 (quoting Westfield Policy at CG 70 93 08 05, Page 4 of 5).) Because we conclude that the Complaint sufficiently alleges that Knerr is an insured under the Expanded Endorsement to the Westfield primary policy, we need not decide whether the Complaint also plausibly alleges that Knerr is an insured under the Blanket Additional Insured Endorsement. We further conclude, accordingly, that the First Cause of Action alleges a facially plausible claim for declaratory judgment with regard to Knerr's status as an insured under the Westfield primary policy and Defendant's obligation to provide a defense to Knerr in the Underlying Action. We therefore deny Defendant's Motion to Dismiss with respect to the First Cause of Action.

Defendant's only arguments for dismissing the Second, Third, and Fourth Causes of Action are that they fail to state claims upon which relief can be granted because Plaintiff has not plead a cognizable claim in the First Cause of Action that Knerr is entitled to coverage under the Westfield primary policy. Accordingly, because we find that the First Cause of Action plausibly

alleges a claim on which relief can be granted, we deny the Motion to Dismiss with respect to the Second, Third and Fourth Causes of Action.

**IV.     CONCLUSION**

For the reasons stated above, we deny Defendant's Motion to Dismiss in its entirety. An appropriate Order follows.

BY THE COURT:


/s/ John R. Padova_____
John R. Padova, J.